**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL ANGELIS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-460 |
| | : | |
| PHILADELPHIA HOUSING | : | |
| AUTHORITY. | : | |

**MEMORANDUM**

**SURRICK, J.**                                              **FEBRUARY 15, 2024**

Presently before the Court are Defendant Philadelphia Housing Authority's ("Defendant" or "PHA") Motion to Dismiss (ECF No. 7) and Plaintiff Daniel Angelis's ("Plaintiff") Motion to Strike Defendant's Motion to Dismiss (ECF No. 9). For the following reasons, Defendant's Motion is granted in part and denied in part, and Plaintiff's Motion is denied.

This employment discrimination case arises out of Plaintiff's short tenure at the PHA. Plaintiff asserts claims against PHA for violations of Title VII of the Civil Rights Act of 1964 and 1991, as amended ("Title VII"), the American with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").

Defendant's Motion will be granted with respect to the following claims: (1) discrimination on the basis of sex under Title VII, the PHRA, PFPO (Counts I, II, VIII); (2) disability discrimination under the PHRA (Count V); (3) hostile work environment under Title VII, PHRA, and PFPO (Counts I, II, VIII); (4) failure to accommodate under the ADA, PHRA, and PFPO (Counts III, V, IX); and (5) retaliation on the basis of sex and disability under the ADA, Title VII, PHRA, and PFPO (Counts IV, VI, VII, X). These claims will be dismissed without prejudice.

Defendant's Motion will be denied with respect to the following claims: (1) sexual orientation discrimination under Title VII, PHRA, and PFPO (Counts I, II, VIII); (2) disability discrimination under the ADA and PFPO (Counts III, IX); and (3) retaliation on the basis of sexual orientation under Title VII, PHRA, and PFPO.  (Counts VI, VII, X).

## I.     BACKGROUND

### A.     Factual Allegations

In his Amended Complaint, Plaintiff alleges the following:

Plaintiff was employed as a Network Technician at PHA from September 18, 2020, through December 3, 2020.  (Am. Compl., ECF No. 6, ¶¶ 11-12.)

Prior to his employment, Plaintiff was diagnosed with and suffered from anxiety.  (*Id.*, ¶ 13.)  He alleges that his anxiety "substantially impairs one or more of his major life activities, including[] but not limited to, sleeping, concentrating, and normal cognitive function."  (*Id.*)

Around the end of September 2020, Plaintiff disclosed his disability and his sexual orientation to human resources, his supervisors, and his co-workers.  (*Id.*, ¶ 14.)  Plaintiff alleges that after this disclosure Defendant discriminated against him.  (*Id.*)

For example, he alleges that on October 6, 2020, another Network Technician, Kerry Lnu, loudly and forcefully threw computer hardware into a cart.  (*Id.*, ¶ 15.)  When asked to quiet down, he responded that "Someone has to know that a man works here" and looked at Plaintiff.  (*Id.*)  Plaintiff interpreted this behavior to mean that Lnu was suggesting that "Plaintiff was not a man due to his sexuality."  (*Id.*)  Lnu also called Plaintiff a "faggot" that day.  (*Id.*, ¶ 16.)  Approximately the next day, on or about October 7, 2020, a different Network Technician, Brian Derenzo, asked Plaintiff how to spell his last name, to which a supervisor, Richard Brown, responded "asshole."  (*Id.*, ¶ 17.)

Plaintiff's symptoms from his anxiety escalated due to "the ongoing anti-gay harassment [he] experienced in the workplace." (*Id.*, ¶ 18.) As a result, Plaintiff disclosed his disability to Human Resources Representative Stacy Collins on or about October 28, 2020. (*Id.*) Plaintiff "requested flexibility in calling out of work" and a system "whereby a co-worker could review his work as needed" as reasonable accommodations. (*Id.*) Collins did not acknowledge his request. (*Id.*) Plaintiff followed up with Collins, who "failed and refused to meaningfully engage with his request," but forwarded Plaintiff general information about Defendant's Employee Assistance Program. (*Id.*)

Plaintiff claims that Defendant then began to retaliate against him for requesting a reasonable accommodation. (*Id.*, ¶ 19.) For example, Plaintiff alleges that Brown, a supervisor, refused to provide Plaintiff necessary access to a variety of Defendant's network tools. (*Id.*, ¶ 20.) On information and belief, Plaintiff claims that Defendant "systematically withheld" these tools to "thwart Plaintiff's performance" as discrimination and retaliation for requesting a reasonable accommodation. (*Id.*)

On or about November 16, 2020, less than three weeks after Plaintiff spoke to Collins, Brown "muttered 'fucking faggot' at Plaintiff under his breath." (*Id.*, ¶ 21.)

Three days later, on November 19, 2020, Plaintiff filed a formal complaint with Defendant alleging sex discrimination, sexual orientation discrimination, and disability discrimination. (*Id.*, ¶ 22.) Plaintiff alleges that afterwards, he was "subjected to unwarranted criticism" and "deprived . . . of equipment and job responsibilities, including network access and functionality." (*Id.*, ¶ 23.)

Less than two weeks after Plaintiff filed a formal complaint, Brown approached each heterosexual Network Technician, and asked about their Thanksgiving plans. (*Id.*, ¶ 24.)

Plaintiff claims that "Brown specifically and intentionally excluded Plaintiff, Defendant's only gay Network Technician, from his inquiry as a signal that he disapproved [of] Plaintiff's home life as a gay individual." (*Id.*)

On or about December 3, 2020, Collins terminated Plaintiff for being "too combative." (*Id.*, ¶ 25.) Plaintiff believes that the reason provided for his termination was "pretext for sexual orientation and/or disability discrimination and/or in retaliation for requesting a reasonable accommodation." (*Id.*)

### B.    Charge of Discrimination

Plaintiff filed a Charge of Discrimination ("Charge") with the City of Philadelphia Commission of Human Relations on March 20, 2021. (Charge, ECF No. 7-2.) The Charge was dually filed with the Equal Employment Opportunity Commission ("EEOC"). (Mem. of Law. ISO Sec. Mot. to Dismiss ("Mot."), ECF 7-1, at 6.) Plaintiff specified in the Charge that he was discriminated against on the basis of his sexual orientation, actual or perceived disability, and his record of impairment, and that he was retaliated against for requesting a reasonable accommodation for his disability. (Charge at 1-2.) Plaintiff stated that Defendant's actions violated the PFPO, the PHRA, the ADA, and Title VII. (*Id.* at 3.) The factual allegations in the Charge mirror the factual allegations in the Complaint, including the October 6 and 7, 2020 incidents; that Plaintiff experienced an escalation of his disability symptoms and requested reasonable accommodations, which were not provided; that Plaintiff was not given access to various network tools; and was called a "faggot" on more than one occasion. (*Id.* at 2-3.) The Charge specifies that Collins terminated Plaintiff for "fail[ing] to complete his probationary period due to being 'too combative.'" (*Id.* at 3.)

### C.       Procedural History

Plaintiff filed this action on February 6, 2023.  (ECF No. 1.)  Defendant filed a motion to dismiss for failure to state a claim on April 6, 2023.  (ECF No. 5.)  On April 20, 2023, fourteen days later, Plaintiff filed an Amended Complaint.  (Am. Compl.)  The Amended Complaint rendered Defendant's initial motion to dismiss moot.  (ECF No. 8.)  The Amended Complaint alleges ten counts under federal, state, and municipal law.  (Am. Compl., ¶¶ 26-65.)  Defendant filed a motion to dismiss for failure to state a claim eighteen days later, on May 8, 2023.  (ECF No. 7.)  Plaintiff filed a motion to strike Defendant's subsequent motion to dismiss three days later, on May 11, 2023.  (Mot. to Strike, ECF No. 9.)

## II.     LEGAL STANDARD

### A.       Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike "are disfavored and usually will be denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'"  *Jones v. United States,* No. 10-3502, 2012 WL 2340096, at *2 (D.N.J. June 18, 2012) (quoting *River Road Dev. Corp. v. Carlson Corp.,* No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).  District Courts have "considerable discretion" in deciding a motion to strike under Rule 12(f).  *Id.*

### B.       Motion to Dismiss

"[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss pursuant to Rule 12(b)(6).  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir.

2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  The court should also consider the exhibits attached to the complaint and matters of public record.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

A complaint that merely alleges entitlement to relief, without alleging facts that show such an entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  A complaint must contain "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III.    DISCUSSION

####    A.    Motion to Strike

Plaintiff's Motion is denied.  Plaintiff asks us to strike Defendant's second Motion to Dismiss in its entirety because it was filed four days late.  (Mot. to Strike at 1, 3 (ECF pagination).)  Defendant filed its Motion eighteen days after the Amended Complaint was filed. (Am. Compl.; Mot.)  Under Fed. R. Civ. P. 15(a)(3), Defendant had fourteen days to file any responsive pleadings to the Amended Complaint, and not twenty-one days, under Fed. R. Civ. P. 12(a)(1)(A)(i).  Defendant acknowledges that it miscalculated the deadline and that the oversight was "unfortunate and inadvertent."  (Opp'n to Mot. to Strike, ECF No. 10, at 3 n.1.)

"Prejudice to one or more of the parties [is] a touchstone for deciding a motion to strike." *Fulton Fin. Advisors, Nat. Ass'n v. NatCity Invs., Inc.*, No. 09-4855, 2013 WL 5635977, at *19 (E.D. Pa. Oct. 15, 2013).  Here, Plaintiff is not prejudiced by our consideration of Defendant's Motion.  If the Court granted Plaintiff's Motion, Defendant could still challenge Plaintiff's action by answering the Amended Complaint and filing a motion for judgment on the pleadings.  *Cf. Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015) (considering a successive 12(b)(6) motion is "usually harmless" because "the result is the same as if the defendant had filed an answer . . . and filed a motion for judgment on the pleadings"); *Solano v. U.S.*, No. 13-4696, 2015 WL 5177628, at *10 (D.N.J. Sept. 3, 2015) (denying a motion to strike because a party would not benefit from striking opposing counsel's response).  This case is unlike other cases in this district in which judges have granted motions to strike pleadings after lengthy delays.  *See, e.g.*, *Giannone v. Giannone*, No. 16-911, 2017 WL 1079977, at *1 (E.D. Pa. Mar. 22, 2017) (striking a motion to dismiss that was 69 or 116 days late depending on the calculation.)  Striking Defendant's Motion and requiring Defendant to answer the Amended

Complaint and file a motion for judgment on the pleadings would not be an efficient use of the parties' and the Court's resources.  Accordingly, Plaintiff's Motion is denied, and we will adjudicate the merits of Defendant's Motion.

### B.   Motion to Dismiss

#### 1.   Exhaustion Requirement[1]

Defendant first argues that parts of Counts I, II, VI, VII, VIII, and X of the Amended Complaint should be dismissed with prejudice because they were not raised in Plaintiff's Charge, and, as a result, Plaintiff failed to exhaust the administrative remedies.  (Mot. at 6-8.)  In particular, Defendant contends that Plaintiff did not include in his Charge four claims of discrimination based on sex, hostile work environment, retaliation based on sex, and retaliation based on sexual orientation.  (*Id.* at 7.)

Plaintiff argues that these counts are properly included in the Amended Complaint and may proceed because the facts that underly these counts are "reasonably related" to the claims in the Charge and are "fairly within the scope of the" Charge.  (Opp'n to Mot. to Dismiss ("Opp'n"), ECF No. 12, at 5-9.)

---

[1] The Charge was not filed as an exhibit to the Complaint.  Generally, a district court ruling on a motion to dismiss may not consider documents extraneous to the pleadings without converting the motion to a motion for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  But a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).  The Amended Complaint states that all conditions precedent to filing this lawsuit have been fulfilled and that Plaintiff has satisfied all jurisdictional requisites to maintain this suit.  (Am. Compl., ¶¶ 5-6).  Accordingly, the Charge is integral to or explicitly relied upon in the Amended Complaint, and it is appropriate for us to reference the Charge to analyze whether Plaintiff has exhausted administrative requirements without converting the present Motion to a motion for summary judgment.

We agree with Plaintiff and conclude that the four claims that were not included in his Charge may proceed because they are reasonably related to, and fairly within the scope of, the Charge and a reasonable investigation of its allegations.

Generally, a plaintiff cannot bring claims under Title VII, the ADA, the PHRA, or the PFPO in a civil lawsuit that were not included in a charge filed with the EEOC and exhausted at the administrative level. *See Burgh v. Borough Counsel of Montrose*, 251 F.3d 465, 469-71 (3d Cir. 2000) (summarizing administrative procedures and exhaustion requirement under Title VII and the PHRA); *Cook v. City of Philadelphia*, 94 F. Supp. 3d 640, 647 (E.D. Pa. 2015) (stating that Title I of the ADA incorporates the administrative exhaustion requirement of Title VII); *Higgins v. MetLife Inc.*, No. 22-3714, 2023 WL 5309893, at *3-8 (E.D. Pa. Aug. 17, 2023) (summarizing the "long-established line of cases" requiring administrative exhaustion prior to filing a PFPO claim in court). But where a plaintiff asserts a claim at the district court level that was not asserted in an administrative charge, "[t]he relevant test in determining whether [a party] was required to exhaust [their] administrative remedies . . . is whether the acts alleged in the subsequent [] suit are fairly within the scope of the prior EEOC complaint or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). "A reasonable EEOC investigation should include claims not specifically mentioned in the EEOC charge 'where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint.'" *Flora v. Wyndcroft Sch.*, No. 12-6455, 2013 WL 664194, at *4 (E.D. Pa. Feb. 25, 2013) (citing *Pourkay v. City of Philadelphia*, No. 06-5539, 2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009)).

Plaintiff's sex discrimination claim relies on the theory that Defendant discriminated against Plaintiff for not conforming to gender stereotypes of men. (*See* Am. Compl., ¶ 15.) The

9

facts that substantiate this claim also support Plaintiff's claim that he was discriminated against because of his sexual orientation, which was asserted in his Charge.  Similarly, Plaintiff's hostile work environment claim is supported by the same allegations that underlie Plaintiff's claim that he was discriminated against because of his sexual orientation.  (*See Id.*, ¶¶ 15-17, 20, 21-24.) Plaintiff's sex discrimination and hostile work environment claims are therefore "fairly within the scope of the" Charge.  *See Antol*, 82 F.3d at 1295.

With respect to Plaintiff's claims of retaliation on the basis of sex and sexual orientation, the Third Circuit has not adopted a per se rule as to when retaliation claims are ancillary to discrimination-based EEOC charges, and as a result, a "reviewing court must closely scrutinize the record to determine whether retaliation falls within the scope of the actual EEOC investigation." *Flora*, 2013 WL 664194, at *4.  "Where the facts underlying the properly alleged discrimination claims are closely connected to the facts underlying the retaliation claims, courts have deemed the retaliation claims fairly within the scope of an EEOC investigation, notwithstanding the failure to clearly enumerate the basis for such a claim." *Id.* (collecting cases); *see also Jackson v. J. Lewis Crozer Library*, No. 07-481, 2007 WL 2407102, at *4 (E.D. Pa. Aug. 22, 2007) (finding that a retaliation claim was "within the scope of any investigation" of a Charge and noting that "[t]his court has previously read an EEOC complaint liberally to allow for recognition of a cognizable retaliation claim that was not articulated specifically"); *Demshick v. Delaware Valley Convalescent Homes, Inc.*, No. 05-2251, 2007 WL 1244440, at *12 (E.D. Pa. April 26, 2007) (finding that a plaintiff sufficiently exhausted administrative remedies when her "retaliation claim could reasonably be expected to grow out of her charge of [] discrimination"); *Carter v. Potter*, No. 02-7326, 2004 WL 2958428, at *6 (E.D. Pa. Dec. 21, 2004) ("The facts of plaintiff's retaliation claim are virtually identical to the facts of his

disability claim and, therefore, are within the scope of the initial EEOC complaint or a reasonable investigation arising therefrom.").

Here, the allegations that support Plaintiff's claim that Defendant retaliated against him after he requested a reasonable accommodation, (*see* Am. Compl., ¶¶ 20-21), or after he filed a formal complaint of discrimination with Defendant, (*see id.*, ¶¶ 23-25), also support his *prima facie* claim of discrimination, which was asserted in his Charge.  As a result, the retaliation claims are reasonably within the scope of an EEOC investigation of the Charge, and there is a "close nexus between the facts supporting the claims raised in the charge and those in the complaint."  *Pourkay*, 2009 WL 1795814, at *5 (quoting *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984)).  Accordingly, the four claims that Plaintiff did not include in his Charge will not be dismissed for failure to exhaust administrative remedies.

### 2. *Sex, Sexual Orientation, and Disability Discrimination Claims*

#### i. *McDonnell Douglas* Framework

Disparate treatment discrimination claims that are not supported by direct evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Wilson v. Blockbuster, Inc.*, 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008).  To state a *prima facie* claim of discrimination, a plaintiff must allege that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of discrimination.  *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

With respect to the third element, "[a]n adverse employment action is an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 574-

75 (E.D. Pa. 2022) (quoting *Henley v. Brandywine Hosp., LLC*, No. 18-4520, 2019 WL 3326041, at *9 (E.D. Pa. July 24, 2019)).  They include decisions concerning "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 518 (E.D. Pa. 2012) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)).

With respect to the fourth element, "in order to plausibly allege that an 'adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination,' a complaint may . . . allege that 'similarly situated employees who . . . were not members of the same protected class . . . were treated more favorably under similar circumstances' or allege facts that 'otherwise show[ ] a causal nexus between [the employee's] membership in a protected class and the adverse employment action.'" *Magerr v. City of Philadelphia*, No. 15-4264, 2016 WL 1404156, at *8 (E.D. Pa. Apr. 11, 2016) (citations omitted).  An inference of discrimination "may be supported by, among other factors, 'evidence of similar [] discrimination of other employees, or direct evidence of discrimination from statements or actions by . . . supervisors suggesting [] animus." *McGarrigle v. Cristo Rey Phila. High Sch.*, No. 22-4713, 2012 WL 2975870, at *7 (E.D. Pa. Apr. 17, 2023) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010)).  "A plaintiff's subjective belief that [a protected characteristic] played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination." *Wilson*, 571 F. Supp. 2d at 647 (citing *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000)).  "[A] collection of stray remarks and unconnected, coincidental circumstances, and related speculation and conjecture" is not sufficient to give rise to an inference of discrimination.  *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x. 189, 196 (3d Cir. 2014).

If a plaintiff establishes a *prima facie* case, the employer must demonstrate that it had a legitimate, nondiscriminatory reason for its action. *Dodson v. Coatesville Hosp. Corp*., 773 F. App'x 78, 80 (3d Cir. 2019) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-05). The plaintiff must then show that the reason proffered by the employer was "mere pretext" for unlawful discrimination. *Dodson*, 773 F. App'x at 80.

To survive a motion to dismiss, allegations in a disparate treatment claim must "raise a reasonable expectation that discovery will reveal evidence that [a plaintiff's] protected status . . . played either a motivating or determinative factor in [causing an adverse employment action.]" *Connelly v. Lane Const. Corp*., 809 F.3d 780, 791 (3d Cir. 2016). At the motion to dismiss stage, a plaintiff "is not obliged to choose whether she is proceeding under a mixed-motive or pretext theory, nor is she required to . . . engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings." *Connelly*, 809 F.3d at 791. "It suffices for [a plaintiff] to plead facts that, construed in [their] favor, state a claim of discrimination that is 'plausible on its face.'" *Id.* (citing *Iqbal*, 556 U.S. at 678).

Claims pursuant to Title VII, the PHRA and the PFPO are "interpreted coextensively." *Mercado v. Sugarhouse HSP Gaming, L.P.*, No. 18-3641, 2019 WL 3318355, at *4 n.2 (E.D. Pa. July 23, 2019). The same legal framework applies to disparate treatment claims under the ADA, the PHRA, and the PFPO. *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 (3d Cir. 2011) (PHRA); *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) (PFPO).

ii.      Sex Discrimination (Counts I, II, VIII: Title VII, PHRA, and PFPO)

Plaintiff's sex discrimination claims are dismissed without prejudice.  Defendant argues that Plaintiff has not pled a sex discrimination claim independent of his sexual orientation claim because his allegations refer to his sexual orientation and disability, and not to his sex.  (Mot. at 8-9.)  Defendant also contends that Plaintiff has not alleged that he suffered an adverse employment action because of his sex.  (*Id*. at 10.)  Plaintiff claims that he has adequately pled sex discrimination because sexual orientation discrimination and discrimination based on gender stereotyping are a form of sex discrimination.  (Opp'n at 10.)

We agree with Defendant that Plaintiff has not pled an independent sex discrimination claim.  "[T]he line between sexual orientation discrimination and discrimination 'because of sex' can be difficult to draw."  *Prowel v. Wise Bus. Forms, Inc.,* 579 F.3d 285, 291 (3d Cir. 2009).  "Discrimination because of sex includes discrimination on the basis of a person's failure to conform to stereotypes associated with his or her sex."  *Frank "Doe" v. WM Operating, LLC*, No. 17-2204, 2017 WL 3390195, at *2 (E.D. Pa. Aug. 7, 2017) (citing *Prowel*, 579 F.3d at 289-92).  "A plaintiff can state a Title VII claim if he alleges that he was discriminated against because a supervisor perceived that he defied sex stereotypes, even if he also alleges that he was discriminated against for being gay."  *Frank "Doe*," 2017 WL 3390195, at *2 (citing *Prowel*, 579 F.3d at 291).  A plaintiff need not allege that they "actually acted effeminately."  *Id.* at *3.  He must "merely show that he was perceived to be a member of a protected category."  *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)).

Plaintiff pled that he was a member of a protected class and that he was subjected to an uncomfortable comment from a fellow Network Technician, who stated that "someone has to know that a man works here," in the beginning of October 2020.  (Am. Compl., ¶ 15.)  Plaintiff

interpreted this statement as referring to his sexuality.  (*Id.*)  He pled that he was qualified for his position, and his termination constitutes an adverse employment action.  (*Id.*, ¶¶ 12, 25.)

But Plaintiff has not pled facts that could give rise to an inference of discrimination to satisfy the fourth element.  He has only alleged one comment related to his failure to conform to stereotypes associated with his sex, which allegedly was articulated by a co-worker two months before Plaintiff was terminated.  (*See Id.*, ¶¶ 15, 25); *see Morgan v. Fiorentino*, No. 17-1142, 2019 WL 2642863, at *8 (M.D. Pa. June 27, 2019) ("Aside from his own conclusory allegations that he was terminated as a result of gender-stereotyping, [the [plaintiff] has not pointed to anything in the record establishing any causal connection between his gender and his termination.").  There is no indication that the individuals who terminated Plaintiff were even aware of the comment from Plaintiff's fellow Network Technician two months prior.  The other allegations Plaintiff raises concern his sexual orientation, not his failure to conform to gender stereotypes.  (*See* Am. Compl., ¶¶ 16-17, 20-21, 24-25.)  As such, Plaintiff's sex discrimination claims are dismissed without prejudice.

      iii.      Sexual Orientation Discrimination (Counts I, II, VIII: Title VII, PHRA, and PFPO)

Plaintiff's claims that he was discriminated against based on his sexual orientation may proceed.  Defendant contends that Plaintiff has not alleged that he suffered an adverse employment action because of his sexual orientation.  (Mot. at 10.)  In particular, Defendant emphasizes that Plaintiff has not alleged that the supervisor and coworker who allegedly called him derogatory words took any adverse employment action against him.  (*Id.* at 11.)  Plaintiff alleges that he was terminated by Collins and alleges that he told her about his disability prior to the termination, but does not mention that he told her about his sexual orientation.  (*Id.*)  As such,

Defendant contends that Collins "could not have possibly terminated him based on his sexual orientation." (*Id.*)

Plaintiff maintains that the Amended Complaint supports his position that he faced an adverse employment action because of his sexual orientation for a variety of reasons. (Opp'n at 12.) First, he alleges that he informed "human resources, Plaintiffs' supervisors, and his co-workers" of his sexual orientation. (*See Id.*; Am. Compl., ¶ 14.) He claims that after this disclosure, he "faced multiple acts of discrimination from several different colleagues on the basis of his sexual orientation, which Defendant failed to correct" and ultimately led to his termination. (Opp'n at 12-13.) Second, Plaintiff maintains that Collins could have terminated him based on his sexual orientation because he alleges that he disclosed his sexual orientation to "human resources," which includes Collins, a Human Resources Representative. (*Id.* at 13.) Lastly, Plaintiff contends that "knowledge of his homosexuality" was widespread at Defendant, and that it is "beyond plausible that Collins knew of Plaintiff's sexual orientation at the time of his termination." (*Id.*)

"[H]omosexuality . . . [is a] distinct concept[] from sex," but discrimination on the basis of sexual orientation is prohibited under Title VII as a form of sex discrimination. *Bostock v. Clayton Cnty, Georgia*, 140 S.Ct. 1731, 1741, 1746-47, 1754 (2020) ("[I]t is impossible to discriminate against a person for being [gay] without discriminating against that individual based on sex."). Here, Plaintiff alleged that he is a member of a protected class because he is homosexual, and his allegation that he maintained excellent job performance ratings reflects that he was qualified for his position. (Am. Compl., ¶¶ 12, 14, 22.) His termination constitutes an adverse employment action. (*Id.*, ¶ 25.) He alleged that in the approximately eleven weeks that he was employed at Defendant he was subjected to multiple derogatory comments by his co-

workers and a supervisor about his sexuality, including being called a "faggot" twice, (*Id.*, ¶¶ 15-17); he experienced an escalation of anxiety symptoms as a result and requested reasonable accommodations, (*Id.*, ¶ 18); and he was denied access to necessary tools to complete his job responsibilities "as further sexual orientation discrimination," while derogatory comments about Plaintiff's sexuality continued.  (*Id.*, ¶¶ 20-21, 24.)  Meanwhile, Plaintiff filed a formal complaint of sex discrimination, sexual orientation discrimination, and disability discrimination, and two weeks later he was fired for being "too combative."  (*Id.*, ¶¶ 22, 25.)  On these facts, Plaintiff has sufficiently alleged that discovery may reveal further evidence that Plaintiff's termination occurred under circumstances that could give rise to an inference of discrimination. *See T.D.H. v. Kazi Foods of New Jersey, Inc.*, No. 23-634, 2023 WL 4567722, at *7 (E.D. Pa. July 17, 2023) ("Taking the allegations of Plaintiff's Complaint as true, . . . Plaintiff's allegations that she was subjected to verbal harassment and physical abuse by multiple supervisors due to her gender/sex and/or gender identity and suspended, transferred and ultimately discharged in the wake of this alleged conduct are sufficient, at this early stage of litigation, to raise an inference of intentional discrimination"); *Miller v. Tithonus Tyrone, L.P.*, No. 20-31, 2020 WL 2065941, at *6 (W.D. Pa. Apr. 29, 2020) ("The fourth element, the inference of discrimination, is, at the motion to dismiss stage, an 'easy burden' to carry" and finding that "allegations give rise to a plausible inference that [a plaintiff] was treated less favorably than others not of her [protected class]") (citation omitted).  Accordingly, Plaintiff's sexual orientation discrimination claims may proceed.

      iv.       Disability Discrimination (Counts III, V, IX: ADA, PHRA, and PFPO)

Plaintiff's disability discrimination claims under the ADA and PFPO may proceed, but Plaintiff's disability discrimination claim under the PHRA is dismissed without prejudice.

Plaintiff has sufficiently alleged that he has an ADA-qualifying disability, but he has not met the more stringent standard under the PHRA.

Defendant argues that Plaintiff has neither alleged that he is disabled within the meaning of the ADA nor articulated a connection between an alleged disability and an adverse employment action.  (Mot. at 14.)

Plaintiff argues that his Amended Complaint adequately demonstrates that he has an ADA-qualifying disability because he pled that he suffers from anxiety and that his anxiety substantially impairs his sleeping, concentrating, and normal cognitive function.  (Opp'n at 16.)  Plaintiff also contends that he sufficiently pled that he was "regarded as" disabled because of the temporal proximity between when he disclosed his disability to Defendant and when he was terminated. (*Id.* at 17.)  Plaintiff does not address Defendant's argument that Plaintiff has not satisfied the third prong to allege a *prima facie* case of discrimination.

To state a claim under the ADA, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination."  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

While claims brought under the ADA, PHRA, and PFPO are all analyzed under the *McDonnell Douglas* framework, *see Bialko*, 434 F. App'x at 142; *Ahern*, 183 F. Supp. 3d at 668, the PHRA requires a more stringent interpretation of disability than the ADA, which is reflected in decisions prior to the ADA Amendments Act of 2008 ("ADAAA").  *See Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 704 (E.D. Pa. 2015) (finding that the majority of courts in the Third Circuit conclude that the definition of disability under the ADAAA is different than the definition under the PHRA); *Szarawara v. Cnty. of Montgomery*, No. 12-5714, 2013 WL

3230691, at *2 (E.D. Pa. June 27, 2013) ("The ADAAA relaxed the ADA's standard for

disability, . . . but the PHRA has not been similarly amended, necessitating separate analysis of

Plaintiff's ADA and PHRA claims.") (internal citations omitted).  The PFPO, meanwhile, adopts

the same definition of disability as the ADA.  *See Amorosi v. Molino*, No. 06-5524, 2009 WL

737338, at *3 (E.D. Pa. Mar. 19, 2009).  Accordingly, while the parties only focus on the

definition of a disability under the ADA, (*see* Mot. at 15-16; Opp'n at 15-17), we analyze the

ADA and PHRA definitions of a disability separately.

1.    Disabled under the ADA[2]

The ADA defines a disability as (1) "a physical or mental impairment that substantially

limits one or more major life activities of such individual;" (2) "a record of such an impairment";

or (3) when an individual is "regarded as having such an impairment[.]"  42 U.S.C. § 12102(1);

"Major life activities" include but are not limited to "caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with

others, and working."  *Id.* § 12102(2)(A).  "[A] major life activity also includes the operation of

a major bodily function, including but not limited to, functions of the immune system, normal

cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine,

and reproductive functions."  *Id.* § 12102(2)(B).

The ADA does not define the phrase "substantially limits."  Under 29 C.F.R.

§ 1630.2(j)(1)(ii), "[a]n impairment is a disability . . . if it substantially limits the ability of an

---

[2] The Amended Complaint includes conclusory, legal language that Defendant subjected Plaintiff to unlawful discrimination on the basis of a record of impairment (Anxiety).  (Am. Compl., ¶¶ 35, 43.)  But neither Plaintiff nor Defendant analyze in their papers whether Plaintiff has sufficiently alleged that he had a "record of [] an impairment" under the ADA.  42 U.S.C. § 12102(1).  Their analyses focus on whether Plaintiff has adequately alleged that he had a qualifying disability or was "regarded as" disabled.  *See* Mot. at 15-16; Opp'n at 16-17.  As such, we only focus on these two statutory definitions of a disability.

individual to perform a major life activity *as compared to most people in the general population*" (emphasis added).  "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*

Plaintiff has sufficiently alleged that he has an ADA-qualifying disability.  Plaintiff alleged that he was "diagnosed with, and suffers from, Anxiety," which "constitutes a disability within the meaning of the [ADA] and [PHRA]," and that his anxiety "substantially impairs . . . [his] sleeping, concentrating, and normal cognitive function."  (Am. Compl., ¶ 13.)  He stated that "[a]s a result of the ongoing anti-gay harassment [he] experienced in the workplace, [he] experienced an escalation of his" anxiety, for which he requested a reasonable accommodation. (*Id.*, ¶ 18.)  Plaintiff alleged that he disclosed his disability to Human Resources, requested a reasonable accommodation in light of his escalating symptoms, and filed a formal complaint of disability discrimination.  (*Id.*, ¶¶ 14, 18, 22.)

At this stage of litigation, Plaintiff must *plead* that he is an individual with a disability; he need not *prove* that he is disabled or "go into particulars about the life activity affected by [his] alleged disability or detail the nature of [his] substantial limitations."  *See Fowler*, 578 F.3d at 213.  A complaint that "identifies an impairment," indicates that the Defendant was aware of the impairment, alleges that the impairment constitutes a disability under federal law, and "plausibly suggests that [the individual] might be substantially limited" in a specified major life activity is sufficient to plead that an individual has a disability under the ADA.  *See id.*

Plaintiff has met this standard.  Here, Plaintiff has stated that he was diagnosed with anxiety and identified three major life activities that are impacted by his condition: sleep, concentration, and cognition.  (Am. Compl., ¶ 13.)  His position that he is substantially limited

by his disability, as compared to most people in the general population, is supported by his allegation that his symptoms escalated following alleged harassment at work, which prompted him to request reasonable accommodations.  (*Id.*, ¶ 18); *see Emerson v. Stern & Eisenberg, P.C.*, No. 21-3096, 2022 WL 10208548, at *7 (E.D. Pa. Oct. 17, 2022) (finding that a plaintiff's reference to a hospital stay "supports a reasonable inference that her ability to work and care for herself was affected by her hypertension"); *Honauer v. N. Jersey Truck Ctr.*, No. 19-cv-8947, 2020 WL 5422824, at *3 (D.N.J. Sept. 10, 2020) (quoting *Fowler*, 578 F.3d at 213) ("At the pleading stage, . . . [a plaintiff] need not 'go into the particulars about the life activity affected by [his] alleged disability or detail the nature of [his] substantial limitations.'").  Therefore, Plaintiff has sufficiently alleged that he has an ADA-qualifying disability to survive a motion to dismiss.

### 2.       "Regarded as" Disabled under the ADA

Plaintiff has not sufficiently alleged that he was "regarded as" disabled because he has not alleged facts from which we can infer that his condition was neither transitory nor minor.

"A plaintiff states a 'regarded as' claim if [they] "establish[] that [they have] been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(3)(A)).  The ADA "limits 'regarded as' claims by excluding 'impairments that are transitory *and* minor.'" *Eshleman*, 961 F.3d at 246 (quoting 42 U.S.C. § 12102(3)(B)) (emphasis added).

Under the ADA, "transitory" is "an impairment with an actual or expected duration of six months or less." 42 U.S.C. § 12102(3)(B).  "The ADA does not define 'minor.'" *Baker v. City of Washington, Pennsylvania*, No. 19-113, 2021 WL 2379709, at *12 (W.D. Pa. June 10, 2021).

21

"In determining whether an impairment is minor, courts inquire on a case-by-case basis into several factors including: the symptoms and severity of the impairment; the type of treatment required; the risk involved; whether any surgical intervention is anticipated or necessary; and the scope of post-operative care." *Baker*, 2021 WL 2379709, at *12 (citing *Eshleman*, 961 F.3d at 249). "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993)). Here, besides pleading that his symptoms escalated and that he requested a reasonable accommodation as a result, (*see* Am. Compl., ¶ 18), Plaintiff does not allege facts that bear on the duration or severity of his symptoms. Accordingly, Plaintiff has not alleged facts from which we can infer that he was "regarded as" disabled under the ADA by his former employer.

### 3.     Disabled under the PHRA

"In order to establish actual disability under the PHRA, a plaintiff must demonstrate that she has [an] 'actual mental or physical impairment that substantially limits one or more major life activities.'" *Sowell*, 139 F. Supp. 3d at 704 (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012)). The phrase "substantially limits" for purposes of this statute means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." *Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 782-83 (3d Cir. 1998) (citing pre-ADAAA EEOC regulations 29 C.F.R. § 1630.2(j)(1)(i),(ii))). "The nature and

severity of the impairment," "the duration or expected duration of the impairment," and "the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment" are analyzed to determine whether an individual meets this standard. *Emory v. AstraZeneca Pharm. LP*, 401 F.3d 174, 180 (3d Cir. 2005).  A "disability determination does not depend as much on the name or diagnosis of the impairment as it does on the effect of the impairment on a particular individual."  *Gaul v. AT & T, Inc*., 955 F. Supp. 346, 350 (D.N.J. 1997).

 In the Amended Complaint, Plaintiff identified his diagnosis and that he experienced an escalation of symptoms due to his work environment.  (Am. Compl., ¶¶ 13, 18.)  Plaintiff alleged that his anxiety "substantially impairs" the major life activities of sleeping, concentrating, and normal cognitive function, (*see id.*, ¶ 13), but he has not accompanied these statements with facts from which we can infer in what ways he was "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform [these] major life activit[ies.]"  *Mondzelewski,* 162 F.3d at 782-83; *Mundy v. City of Pittsburgh*, No. 22-31, 2022 WL 17851629, at *7 (W.D. Pa. Dec. 22, 2022) (finding that a plaintiff did not allege that she was disabled when she did not "describe how [her] anxiety condition impairs her major life activities as compared to most people in the general population").  Similarly, Plaintiff has not pled facts from which we can infer the nature or severity of his condition, its duration or expected duration, or any expected permanent or long-term impacts associated with it.  *See Maslanka v. Johnson & Johnson, Inc.*, 305 F. App'x 848, 852 (3d Cir. 2008) (affirming a district court's finding that a parties' depression and anxiety did not constitute a disability when "there is nothing in this record indicating that his impairment substantially limited the major life activities of sleeping, concentrating, or working"); *Ashton v. Am. Tel. & Tel. Co.*, 225 F. App'x 61, 67 (3d Cir. 2007)

(holding that a plaintiff's anxiety condition did not constitute a disability in part because "there is nothing in [the] record to show that [the plaintiff] suffered negative long-term or permanent impact from her impairment").  Accordingly, Plaintiff has not sufficiently alleged that he was disabled under the PHRA.

### 4.  "Regarded as" Disabled under the PHRA

Under the pre-2008 amendments to the ADA, an individual is "regarded as" having a disability if he:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;
>
> or (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999) (quoting 29 C.F.R. § 1630.2).

Whether an employee is "regarded as" disabled "is a question of [an employer's] intent, and [does] not [revolve on] whether [a p]laintiff was actually disabled at the time of the adverse employment action." *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 694 (W.D. Pa. 2014) (citing *Eshelman*, 554 F.3d at 434).  "An employer 'must do more than demonstrate that [they were] aware'" of the employee's impairment.  *Sowell*, 139 F. Supp. 3d at 705 (citing *McGovern v. MVM, Inc.*, 545 F. Supp. 2d 468, 474 (E.D. Pa. 2008).  In particular, for an employee to be "regarded as" disabled, an employer must "believe[] that [an employee's] perceived disability substantially limits a major life activity." *Rubano*, 991 F. Supp. 2d at 694 (citing *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 434 (3d Cir. 2009)).

Plaintiff alleged that he disclosed his disability to human resources, his supervisors, and co-workers.  (Am. Compl., ¶¶ 14, 18.)  However, contrary to Plaintiff's assertion, (*see* Opp'n at

17), "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled." *Kelly*, 94 F.3d at 109. Plaintiff alleged that a representative from Human Resources "failed and refused to acknowledge" Plaintiff's requests for reasonable accommodations and forwarded Plaintiff general information about Defendant's Employee Assistance Program.  (Am. Compl., ¶ 18.) These facts do not bear on Defendant's knowledge or beliefs concerning the substantiality of Plaintiff's anxiety; they are insufficient to allege that Defendant believed that Plaintiff's anxiety substantially limited a major life activity.  *See Merit v. Se. Pennsylvania Transit Auth.*, 315 F. Supp. 2d 689, 702 (E.D. Pa. Apr. 30, 2004) (finding that although a plaintiff presented support that a defendant "was aware of her impairments," she "does not present evidence of how [the defendant] perceived these impairments").  Accordingly, Plaintiff has not stated a claim that he was "regarded as" disabled under the PHRA.  Because Plaintiff has insufficiently pled that he was disabled or "regarded as" disabled under the PHRA, Plaintiff has not stated a *prima facie* claim of disability discrimination under the PHRA.

### 5.     Causation

Plaintiff has alleged facts from which we can infer at this early pleading stage that he was subjected to an adverse employment decision as a result of his disability.  Plaintiff requested a reasonable accommodation on October 28, 2020.  (Am. Compl., ¶ 18.)  Plaintiff alleges that afterwards, a supervisor, Brown, refused to provide Plaintiff access to variety of network tools to perform his job and called Plaintiff a "fucking faggot" under his breath.  (*Id.*, ¶¶ 20-21.) Retaliation against an employee for requesting an accommodation is prohibited discrimination under the ADA.  *Sulima*, 602 F.3d at 188.  Approximately three weeks after requesting an accommodation, Plaintiff filed a formal complaint of sex discrimination, sexual orientation

discrimination, and disability discrimination with Defendant. (Am. Compl., ¶ 22.) Two weeks later and five weeks after requesting an accommodation, on December 3, 2020, Plaintiff was "abruptly terminated" by a representative from Human Resources for being "too combative." (*Id.*, ¶ 25.)

At the pleading stage, a Plaintiff must only meet a "minimal burden as to the issue of causation." *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 2020). Plaintiff has satisfied the third prong of a *prima facie* disability discrimination claim because Plaintiff was terminated five weeks after he requested an accommodation and two weeks after filing a formal complaint of disability discrimination. *See, e.g.*, *Worthington v. Chester Downs & Marina, LLC*, No. 17-1360, 2018 WL 6737447, at *5 (E.D. Pa. Dec. 21, 2018) (finding that a reasonable jury could conclude that a plaintiff's disability and accommodation request were the cause of his termination when evidence showed that the defendant treated the plaintiff in an "adversarial manner" after he requested an accommodation, subjected him to harassing phone calls, and then fired him three weeks after he disclosed his disability and requested an accommodation); *see also Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 492 (E.D. Pa. 2018) ("The close temporal proximity between Plaintiff's request for FMLA leave and his termination only a month later is sufficient to state a claim at this stage of the proceedings"); *Bacon, Jr. v. T-Mobile USA, Inc.*, No. 09-5608, 2010 WL 3340517, at *8 (W.D. Wash. Aug. 23, 2010) ("[T]he timing of the decision to terminate [a plaintiff], within two months [after the plaintiff displayed disruptive behavior], and within a month of his formal request for accommodations for his disabilities, is sufficient for a jury to conclude that the decision to terminate him was motivated by his disability."). Accordingly, Plaintiff's disability discrimination claims under the ADA and PFPO

survive Defendant's Motion, but Plaintiff's disability discrimination claim under the PHRA is dismissed without prejudice.

> v.      Failure to Accommodate and Engage in the Interactive
>         Process (Counts III, V, IX: ADA, PHRA, and PFPO)

Plaintiff's failure to accommodate claims are dismissed without prejudice because Plaintiff has not alleged that Defendant could have reasonably accommodated him.

Defendant argues that Plaintiff has not alleged a failure to accommodate claim because he has not sufficiently alleged that he was disabled or that Defendant could have accommodated him.  (Mot. at 15-17.)

Plaintiff argues that he has stated a claim because he pled that he disclosed his disability to Human Resources, requested a reasonable accommodation, and that his request was refused. (Opp'n at 18.)  Plaintiff also maintains that whether Defendant failed to accommodate Plaintiff or failed to engage in the interactive process are questions of fact that are not appropriate to be resolved on a motion to dismiss.  (*Id.* at 17-18.)

An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless such covered entity can demonstrate that the accommodation would impose an undue hardship" to the employer.  42 U.S.C. § 12112(b)(5)(A).  A reasonable accommodation includes "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  "To determine the appropriate reasonable accommodation, it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  *Id.*, § 1630.2(o)(3).  "This process should

identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*

To state a failure to accommodate claim, Plaintiff must plead that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).[3]  "If an employer has adequate notice of an employee's disability, and the employee requests accommodations for the disability, it becomes the responsibility of the employer to 'engage the employee in the interactive process of finding accommodations.'"  *Armstrong*, 438 F.3d at 246 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999)).  A failure to accommodate claim is distinct from a disparate treatment claim and is not governed by the *McDonnell Douglas* burden-shifting framework.  *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014).

Only "a *prima facie* showing that [a] reasonable accommodation *is possible*" is required to state a claim.  *Burbach v. Arconic Corp.*, 561 F. Supp. 3d 508, 521 (W.D. Pa. 2021) (quoting *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)) (emphasis added).  This can be satisfied by, for example, alleging that a requested accommodation has been granted in the past, stating that a party could perform their job with an accommodation, or by pleading that necessary conditions were present for an accommodation to be implemented, such as the availability of a position if an individual sought a transfer from one position to another as an accommodation.  *See Burbach*, 561 F. Supp. 3d at 521; *Huff v. Quakertown Cmty. Sch. Dist.*, No. 16-2740, 2017 WL 4049233,

---

[3] *Armstrong* involved a claim under the N.J. Law Against Discrimination, but the requirements for failure to accommodate claims under this state law have been interpreted in accordance with the ADA.  *Armstrong*, 438 F.3d at 246 n.12.  In addition, the PHRA and PFPO are also interpreted in accordance with ADA.  *See Kelly*, 94 F.3d at 105 (PHRA); *Ahern*, 183 F. Supp. at 668 (PFPO).

at *3 (E.D. Pa. Sept. 12, 2017); *see also Mundy v. City of Pittsburgh*, No. 22-31, 2022 WL 17851629, at *9 (W.D. Pa. Dec. 22, 2022) (holding that a plaintiff satisfied this element by pleading that their employer could have accommodated them by enforcing its policy).  However, when a plaintiff does not plead facts to suggest that they could be accommodated, a plaintiff has not stated a failure to accommodate claim.  *See Veverka v. Human Serv. Ctr.*, No. 22-1190, 2023 WL 2500370, at *5 (W.D. Pa. Mar. 14, 2023).

Here, Plaintiff has adequately pled that he had an ADA-qualifying disability, as analyzed above, and he alleged that he disclosed his disability to his employer.  (Am. Compl., ¶¶ 14, 18.) He asserted that he requested an accommodation and that his employer did not make a good faith effort to accommodate him as the Human Resources Representative with whom he engaged "failed and refused to acknowledge Plaintiff's request" and only referred him to Defendant's Employee Assistance Program, rather than meaningfully engage with his request when he followed up.  (*Id.*, ¶ 18.)  However, he has not pled allegations from which we can infer that Defendant could have reasonably accommodated him.  Accordingly, Plaintiff's failure to accommodate claims are dismissed without prejudice.  *See Veverka*, 2023 WL 2500370, at *5.

> 3.  *Hostile Work Environment (Counts I, II, VIII: Title VII, PHRA, and PFPO)*

 Plaintiff pled that Defendant created a hostile work environment based on his sex and sexual orientation in violation of Title VII, PHRA, and PFPO (Counts I, II, VIII).[4]  We dismiss Plaintiff's hostile work environment claims without prejudice.

---

[4] We construe Plaintiff's Amended Complaint as alleging hostile work environment claims based on his sex and sexual orientation and not based on his disability.  Counts I, II, and VIII specify that "[t]he actions of the Defendant . . . in subjecting Plaintiff to discrimination and a hostile work environment on the basis of his sex and sexual orientation" constitute violations of Title VII, PHRA, and PFPO.  (Am. Compl., ¶¶ 27, 31, 55.)  With respect to Plaintiff's disability, Plaintiff pled in Counts VII and X that "[t]he actions of the Defendant . . . in retaliating against Plaintiff for opposing unlawful discrimination in the workplace, for requesting a reasonable accommodation for his disability, and creating a retaliatory hostile work

Defendant argues that Plaintiff's claims fail because he has not "adequately alleged the relationship between the purported acts of harassment" and his protected status.  (Mot. at 13.)

In opposition, Plaintiff maintains that his allegation that he disclosed his disability and sexual orientation to human resources, his supervisors, and his co-workers defeats Defendant's argument that Plaintiff did not allege that his supervisor and co-worker knew about his disability or sexual orientation.  (Opp'n at 14.)  Plaintiff also argues that his allegation that he was called homophobic slurs on multiple occasions is sufficient to deny Defendant's motion.  (*Id.*)

We dismiss Plaintiff's hostile work environment claims without prejudice because while he has pled that he was subject to a hostile work environment, he has not alleged facts from which we can infer that Defendant can be held liable for its employees' actions.

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment."  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  "[T]he advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim."  *Cardenas v. Massey*, 269 F.3d 251, 261-62 (3d Cir. 2001); *see also Dey v. Innodata Inc.*, No. 18-978, 2022 WL 596977, at *6 (D.N.J. Feb. 24, 2022) (analyzing a hostile work environment claim based on race and national origin together in the aggregate).

There are five elements of a hostile work environment claim: "(1) the employee suffered intentional discrimination because of his/her sex [or protected status], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the

---

environment" constitute violations of the PHRA and PFPO.  (*Id.*, ¶¶ 51, 63).  These latter counts assert retaliation claims.

discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Mandel*, 706 F.3d at 167; *see also Emerson*, 2022 WL 10208548, at *4 ("To establish a claim for a hostile work environment action, a plaintiff must demonstrate that the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (citations omitted).

"The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Id.* (citing *Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)). "Whether an environment is hostile" depends on the "totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The alleged conduct must "go beyond 'simple teasing, offhand comments, and [non-serious] isolated incidents,' . . . which would 'not amount to discriminatory changes in the terms and conditions of employment.'" *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 280 (3d Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)). Courts must analyze whether "an objectively reasonable person in [the plaintiff's] place might be offended by the alleged incidents." *Mandel*, 706 F.3d at 168.

An employer's liability for a hostile work environment depends on whether the harasser is a co-worker or the victim's supervisor. *Huston*, 568 F.3d at 104. If the hostile work environment was created by the plaintiff's co-worker and not a supervisor, an employer is liable only if it was "negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S.

421, 424 (2013).  In particular, for an employer to be liable in this situation, "management-level employees [must have] had actual or constructive knowledge about the existence of a . . . hostile environment and failed to take prompt and adequate remedial action."  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990), *superseded in part by statute on other grounds*, *as stated in Mood v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017).

"If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable."  *Vance*, 570 U.S. at 424.  If a supervisor harasses an employee but "no tangible employment action is taken [by a supervisor], the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided."  *Id.*

An individual is a supervisor for purposes of vicarious liability under Title VII if they are "empowered by the employer to take tangible employment actions against the victim," and as such possess the authority to "effect a 'significant change in employment status, such as [decisions involving] hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Id.* at 424, 431 (quoting *Burlington Indus., Inc.*, 524 U.S. at 761).

Plaintiff has sufficiently pled that he was subjected to a hostile work environment. Plaintiff has alleged that, within an approximately two-month period, he was singled out because of his sexuality at various times and was subjected to multiple unwelcome comments from his colleagues and a supervisor related to his homosexuality, including being called a "faggot" on two occasions and an "asshole" once, which based on the context could refer to his sexuality. (Am. Compl., ¶¶ 15-17, 20-21, 23-24.)

Being called a "faggot" on at least two occasions is sufficient to allege that Defendant's conduct was severe.  *See Hawkins v. City of Philadelphia*, 571 F. Supp. 3d 455, 463 (E.D. Pa. 2021).  While "Title VII is not prescriptive of good manners [and does not] ban the use of every potential derogatory term, regardless of context in the workplace, . . . the term 'faggot' is so replete with homophobic animus that, if used, instantly separates an individual who identifies as gay from everyone else in the workplace."  *Hawkins*, 571 F. Supp. 3d at 464 (citations omitted and cleaned up); *see also Williams v. Mercy Health Sys.*, 866 F. Supp. 2d 490, 502 (E.D. Pa. 2012) (holding that evidence that a supervisor used the "n-word" three times could lead a reasonable jury to conclude that the supervisor's conduct was sufficiently severe or pervasive to alter the plaintiff's conditions of employment).  Plaintiff also alleged that he was subjected to a comment related to gender-nonconforming behavior, which he interpreted as his co-worker "insinuating that Plaintiff was not a man due to his sexuality," when a co-worker threw computer hardware into a cart and said that "someone has to know that a man works here" while looking at Plaintiff.  (Am. Compl., ¶ 15.)

As analyzed above, Plaintiff has alleged that he suffered intentional discrimination because of his protected status, he asserted that the discrimination detrimentally affected him because the anti-gay harassment caused Plaintiff to experience an escalation of anxiety symptoms, and he felt that he was singled out by a supervisor and denied access to necessary tools to complete his work, ultimately culminating in his termination for being "too combative" soon after.  (*Id.*, ¶¶ 18, 20, 24-25.)  It is reasonable to infer that the conduct alleged would detrimentally affect a reasonable person in like circumstances.  Accordingly, Plaintiff has sufficiently alleged that he experienced a hostile work environment.  *See, e.g.*, *Castleberry*, 863 F.3d at 265-66 (finding that parties stated a plausible claim of hostile work environment when

plaintiffs "alleged that their supervisor used a racially charged slur in front of them and their non-African-American coworkers," the use of the word was accompanied by threats of termination, on several occasions "their sign-in sheets bore racially discriminatory comments and that they were required to do menial tasks while their white colleagues (who were less experienced) were instructed to perform more complex work"); *Barrett v. Pa. Steel Co., Inc.*, No. 14-1103, 2014 WL 3572888, at *3 (E.D. Pa. July 21, 2014) (holding that a plaintiff stated a claim that he was subject to a hostile work environment by alleging "that he was consistently asked crude questions, told crude jokes, called obscene names, told obscene stories, physically threatened, had his work sabotaged and was mocked for not engaging in cursing and crude behavior himself").

However, Plaintiff has not alleged facts from which we can infer that Defendant can be held liable for its employees' actions.  Plaintiff identified a co-worker and a supervisor who allegedly harassed him.  (Am. Compl., ¶¶ 15-17, 20-21, 24.)  An employer is only liable for a hostile work environment created by a co-worker if it was "negligent in controlling working conditions."  *Vance*, 570 U.S. at 424.  "Management-level employees [must have] had actual or constructive knowledge about the existence of a . . . hostile environment and failed to take prompt and adequate remedial action," *Andrews*, 895 F.2d at 1486, or "failed to provide a reasonable avenue for complaints."  *Steiner v. Giant of Maryland, LLC*, No. 22-990, 2023 WL 4421373, at *4 (D. Del. July 10, 2023) (quoting *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  "'Prompt remedial action' is conduct 'reasonably calculated to prevent further harassment,' even if it does not effectively end the harassment."  *Steiner*, 2023 WL 4421373, at *4 (citation omitted).

Here, Plaintiff alleged that he filed a formal complaint of sex discrimination, sexual orientation discrimination, and disability, (Am. Compl., ¶ 22), and he has not alleged that Defendant did not provide a reasonable avenue for complaints.  *See Steiner*, 2023 WL 4421373, at *4 (dismissing a hostile work environment claim in part because a plaintiff utilized avenues to lodge a complaint).  Plaintiff alleged that after filing a formal complaint of discrimination he was "subjected to unwarranted criticism and deprived [] of equipment and job responsibilities" and that a supervisor did not ask him about his Thanksgiving plans, when he asked his non-homosexual colleagues about theirs'.  (Am. Compl., ¶¶ 23-24.)  These allegations do not rise to the level of continued harassment from which we can infer that Defendant failed to take prompt and adequate remedial action.  Plaintiff has not alleged facts to plausibly claim that Defendant "made no effort at all to address his complaints."  *Barrett*, 2014 WL 3572888, at *4.

We also apply the negligence standard with respect to Defendant's liability for any alleged harassment by Richard Brown, who is identified in the Amended Complaint as "Supervisor" and as "refus[ing] to provide Plaintiff necessary access to a variety of Defendant's network tools."  (*Id*., ¶¶ 17, 20.)  An individual is a supervisor for purposes of vicarious liability under Title VII if they are "empowered by the employer to take tangible employment actions against the victim" and possess the authority to "effect a 'significant change in employment status, such as [decisions involving] hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Vance*, 570 U.S. at 424, 431.  However, identifying Brown as a supervisor without alleging facts related to his authority to take tangible employment actions against Plaintiff is not sufficient to determine whether Brown was a supervisor only in name or "whether he wielded the power to cause Plaintiff 'direct economic harm,'" such that Defendant can be held strictly liable for his

actions.  *Vazquez v. Carr and Duff, Inc.*, No. 16-1727, 2017 WL 4310253, at *4 (E.D. Pa. Sept. 28, 2017) (quoting *Vance*, 570 U.S. at 440).  *Compare Barrett*, 2014 WL 3572888, at *4 (applying the negligence standard for vicarious liability when a plaintiff "allege[d] no facts to support [an individual's] classification as a supervisor or to indicate that [they] had the power to take adverse employment action against plaintiff or was involved in plaintiff's being fired"), *with Wirtz v. Unisys Corp.*, 2022 WL 970843, at *4 (E.D. Pa. 2022) (finding that an individual was a supervisor for purposes of liability because the complaint alleged that the individual could deny plaintiff a promotion, fire her, or reassign her with significantly different responsibilities). Accordingly, we apply the negligence standard for purposes of vicarious liability for alleged harassment by Brown as well, even though Plaintiff alleges that he was a supervisor.  As discussed above, Plaintiff has not alleged that Defendant was negligent in controlling its work environment.  Accordingly, Plaintiff's hostile work environment claim is dismissed without prejudice.

### 4.      Retaliation (Counts IV, VI, VII, X: ADA, Title VII, PHRA, and PFPO)

Plaintiff has pled retaliation claims under the ADA, Title VII, PHRA, and PFPO.  (Am. Compl., ¶¶ 38-41, 46-53, 62-65.)  Plaintiff has sufficiently pled retaliation claims based on sexual orientation, but not on the basis of sex or disability.  Plaintiff's retaliation claims based on sex and disability are dismissed without prejudice.

Defendant argues that all of Plaintiff's retaliation claims fail because Plaintiff has not "ple[]d facts demonstrating a causal connection between any 'protected activity' and the asserted adverse action."  (Mot. at 18.)  Plaintiff alleges that he requested a reasonable accommodation and disclosed his disability approximately five weeks before he was terminated, (Am. Compl., ¶¶ 18, 25), but Defendant contends that Plaintiff has not alleged facts "to support that these two

disparate events are in any way related." (Mot. at 18.)  This timeframe is "too remote . . .  to be considered temporally connected," and Plaintiff has not "alleged any facts to support a causal connection."  (*Id.* at 19.)  Defendant also suggests that Plaintiff cannot assert a retaliation claim when Collins, a Human Resources Representative, referred Plaintiff to Defendant's Employee Assistance Program.  (*Id.*)

 In opposition, Plaintiff argues that he has sufficiently pled that he engaged in protected activity on multiple occasions, that his termination constitutes an adverse action, and that he alleges a causal connection between his protected activity and the termination.  (Opp'n at 18-20.) There is no bright line rule regarding the length of time between protected activity and an adverse employment action to establish a causal connection, and such causal questions often are not well-suited to be resolved on a motion to dismiss.  (*Id.* at 19.)  That said, Plaintiff maintains that he sufficiently pled a causal connection between his protected activity and his termination because he was terminated two weeks after he filed a formal complaint of discrimination.  (*Id.* at 20.)

 To survive a motion to dismiss, a plaintiff must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) [they] engaged in [protected] conduct . . .; (2) the employer took adverse action against [them]; and (3) a causal link exists between [their] protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789 (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994)); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  The burden-shifting framework of *McDonnell Douglas* also applies to retaliation claims.  *Krouse*, 126 F.3d at 500.

 Filing an internal complaint of discrimination and requesting a reasonable accommodation are deemed to be protected activity.  *See Shellenberger v. Summit Bancorp Inc.*,

318 F.3d 183, 191 (3d Cir. 2003); *Bailey v. Commerce Nat. Ins. Servs., Inc.*, 267 Fed. Appx. 167, 170 (3d Cir. 2008).  Protected conduct includes not only filing "formal charges of discrimination" but "informal protests of discriminatory employment practices, including complaints to management." *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

"[F]or retaliation, adverse employment actions are construed more broadly than adverse employment actions for purposes of discrimination." *Murphy v. Afnmazon Fulfillment Serv. Inc.*, No. 21-5622, 2022 WL 986264, at *4 (D.N.J. Apr. 1, 2022) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006)).  In the context of retaliation, an adverse employment action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Moore*, 461 F.3d at 341 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  Instead, a "plaintiff claiming retaliation . . . must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from'" engaging in protected activity.  *Id.* (citation omitted).

A plaintiff may establish the requisite causal connection between a protected activity and an adverse employment action through either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Oberdorf v. Penn Vill. Facility Operations, LLC*, No. 15-1880, 2017 WL 839470, at *3 (M.D. Pa. Mar. 3, 2017) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  In the absence of such evidence, a plaintiff can also satisfy this element if "from the 'evidence gleaned from the record as a whole,'" a trier

of fact can infer causation.  *Oberdorf*, 2017 WL 839470, at *3 (quoting *Lauren W. ex rel. Jean W.*, 480 F.3d at 267).

      "'Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity,' unduly suggestive temporal proximity usually falls within periods of days or weeks, not months." *Par. v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 636 (W.D. Pa. 2019) (*citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007).  Courts differ whether a period of a few weeks alone between protected activity and an alleged retaliatory action is unduly suggestive of retaliation.  *Compare Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (finding that a three-week period was not unduly suggestive), *and Killen v. Nw. Hum. Servs., Inc.*, No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that "where several weeks elapsed between [a plaintiff's] complaint and any adverse action, we cannot find that the timing is 'unusually suggestive'"), *with Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283-84 (6th Cir. 2012) (finding that a three-week period was unduly suggestive of discrimination), *and Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (finding that a ten-day timeframe and comments during a meeting could lead a reasonable jury to conclude that a plaintiff was fired for engaging in protected activity).  "The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." *Shellenberger*, 318 F.3d at 189.

      Even if temporal proximity by itself is not unduly suggestive, courts find that this prong is met when "there is other evidence from which an inference of causation can be drawn." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr*, 691 F.3d 294, 307 (3d Cir. 2012); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) ("[T]iming plus other evidence may

be an appropriate test where the temporal proximity is not so close as to be 'unduly

suggestive.'").  For example, allegations support an inference of discrimination and "are

unusually suggestive of discrimination" when a plaintiff was terminated approximately two

weeks after filing an internal complaint with a company and they "alleged facts showing that

[they] experienced antagonism and retaliatory animus after [their] complaints."  *See Sally-*

*Harriet v. N. Children Servs.*, No. 17-4695, 2019 WL 1384275, at *7 (E.D. Pa. Mar. 26, 2019);

*see also Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 613 (D.N.J. 2003) (finding, on

summary judgment, that a party established "an inference of causation" when he was terminated

"approximately five to fifteen days" after he made a report to the police and there was "direct

evidence" that the party's decision to involve the police was a basis for his termination); *Stull v.*

*Leedsworld*, No. 17-378, 2018 WL 576241, at *2, 8 (W.D. Pa. Jan. 26, 2018) (holding that a

plaintiff pled a plausible retaliation claim under Title VII when he alleged that he was fired

within two weeks of filing complaints with Human Resources and he was routinely criticized for

his age and subjected to ageist comments).

We analyze Plaintiff's retaliation claims separately.  Plaintiff has asserted that he was

retaliated against because of his sexual orientation.  Plaintiff alleged that he filed a formal

complaint of sex discrimination, sexual orientation discrimination, and disability discrimination

on November 19, 2020.  (Am. Compl., ¶ 22.)  Filing a formal complaint of discrimination is

protected conduct.  *Barber*, 68 F.3d at 702.  Plaintiff alleged that after he filed a formal

complaint, he was "subjected to unwarranted criticism and deprived . . . of equipment and job

responsibilities."  (Am. Compl., ¶¶ 23-24.)  Two weeks after filing the complaint, on December

3, 2020, Plaintiff was "abruptly terminated" for being "'too combative,'" which Plaintiff alleged

was pretextual.  (*Id.*, ¶ 25.)  Plaintiff's abrupt termination is an adverse employment action.  The

Complaint supports an inference of retaliation due to his sexual orientation because not only was Plaintiff terminated two weeks after filing a complaint, but Plaintiff alleged that he was subjected to "unwarranted criticism," called discriminatory names, such as a "fucking faggot" by a supervisor, targeted because of his sexuality, and deprived of equipment and job responsibilities before and after he filed a formal complaint.  *See Sally-Harriet*, 2019 WL 1384275, at *7; *Stull*, 2018 WL 576241, at *2, 8; (*see also* Am. Compl., ¶¶ 21-24.)  Accordingly, Plaintiff's retaliation claims based on sexual orientation may proceed.

Plaintiff has not stated a claim that he was retaliated against based on his sex.  Filing a formal complaint of sex discrimination on November 19, 2020, is protected conduct, *see Barber*, 68 F.3d at 702; (Am. Compl., ¶ 22), and Plaintiff was fired two weeks later.  (*Id.*, ¶ 25.)  But Plaintiff has not alleged that he experienced antagonism and retaliatory animus related to his sex before and after filing a complaint, as he alleged with respect to his sexual orientation.  A two-week period between the filing of Plaintiff's complaint and his termination alone is not sufficient to support an inference of discrimination.  Accordingly, Plaintiff's claim of retaliation on the basis of sex is dismissed without prejudice.

Similarly, Plaintiff has not stated a claim that he was retaliated against based on his disability.  With respect to this claim, Plaintiff engaged in two potential protected activities: requesting a reasonable accommodation on October 28, 2020, and filing a formal complaint of disability discrimination on November 19, 2020.  (Am. Compl., ¶¶ 18, 22.)  Both are protected activity in this context.  Requesting a reasonable accommodation is protected activity under the ADA if the "plaintiff has a 'reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested."  *Sulima*, 602 F.3d at 188 (quoting *Williams v. Phil. Hous. Auth. Police Dept.*, 380 F.3d 751, 759 n.2, *abrogated on other grounds*, *see Robinson v.*

41

*First State Comm. Action Agency*, 920 F.3d 182, 188 n.30 (3d Cir. 2019)). Courts look to whether there is evidence that the individual requesting an accommodation "was motivated by anything other than good faith" when evaluating whether a plaintiff requested an accommodation reasonably and in good faith. *Id.*; *Suarez v. Penn. Hosp. of Univ. Penn. Health Sys.*, No. 18-1596, 2018 WL 6249711, at *10 (E.D. Pa. Nov. 29, 2018) ("There is nothing in the record to indicate that her request for reinstatement under the ADA was unreasonable or in bad faith, so the request could be construed as a protected activity even though she was not entitled to that accommodation.").

Plaintiff engaged in protected activity when requesting a reasonable accommodation because no facts alleged suggest that Plaintiff was motivated by anything other than good faith when he requested a reasonable accommodation: He alleged that he experienced an escalation of symptoms related to his anxiety because of harassment at work, disclosed his diagnosis, and proposed two reasonable accommodations. (Am. Compl., ¶ 18); *see Sulima*, 602 F.3d at 188. And like Plaintiff's claims of retaliation based on sex and sexual orientation, filing a formal complaint of disability discrimination is protected conduct. *Barber*, 68 F.3d at 702.

We identify two potential adverse employment actions with respect to Plaintiff's ADA retaliation claim. First, Plaintiff alleged that following his disclosure of his diagnosis and request for an accommodation, a supervisor "refused to provide Plaintiff necessary access to a variety of Defendant's network tools," which Plaintiff claims were "systematically withheld" and is further discrimination. (Am. Compl., ¶ 20.) Second, as identified above, two weeks after filing a formal complaint, on December 3, 2020, Plaintiff alleges that he was "abruptly terminated" by a representative from Human Resources, who called Plaintiff "too combative." (*Id.*, ¶ 25.) Both constitute an adverse employment action. Being refused necessary access to perform one's job

42

and being terminated would dissuade a reasonable worker from engaging in protected activity. *See Moore*, 461 F.3d at 341.

However, Plaintiff has not pled facts to support a causal link between his protected conduct and Defendant's adverse action.  For example, Plaintiff alleged that "following his disability disclosure and request for reasonable accommodation," a supervisor "refused to provide Plaintiff necessary access to a variety of Defendant's network tools."  (Am. Compl., ¶ 20.)  He has not provided allegations to indicate that the supervisor was aware that Plaintiff requested a reasonable accommodation or that he acted because Plaintiff had requested a reasonable accommodation.  In addition, although Plaintiff alleged that he was fired approximately two weeks after he filed a formal complaint of discrimination on the basis of sex, sexual orientation, and disability, he has not alleged that he experienced antagonism and retaliatory animus related to his disability before and after filing a complaint, as he alleged with respect to his sexual orientation and from which we can infer causation.  Therefore, Plaintiff's retaliation claim on the basis of disability cannot proceed.

Accordingly, Defendant's Motion is denied with respect to Plaintiff's retaliation claims on the basis of sexual orientation and is granted without prejudice with respect to Plaintiff's retaliation claims on the basis of sex and disability.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion is denied, and Defendant's Motion is granted in part and denied in part.  An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

43